[Cite as *State v. Black*, 2025-Ohio-5261.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                        Court of Appeals No. S-25-001

    Appellee                                    Trial Court No. 24 CR 856

v.

Delvon Black                                        **DECISION AND JUDGMENT**

    Appellant                                   Decided: November 21, 2025

* * * * *

Beth Tischler, Sandusky County Prosecutor, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Joseph Sobecki, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Delvon Black, appeals from a judgment entered by the Sandusky

County Court of Common Pleas following his guilty plea to one count of trespass in a

habitation when a person is present or likely to be present and two counts of receiving

stolen property. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and of the Facts

{¶ 2} Black was indicted on September 6, 2024, with five charges related to events that took place on August 18 and 19, 2024, when Black entered the homes of two others and came into possession of three bank cards belonging to one of the homeowners. The charges included two counts of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B) and (E), felonies of the fourth degree, and three counts of receiving stolen property, in violation of R.C. 2913.51(A) and (C), felonies of the fifth degree.

{¶ 3} On October 8, 2024, Black entered a plea of guilty to one count of trespass in a habitation when a person is present or likely to be present and two counts of receiving stolen property. In exchange for the guilty plea, the State agreed to dismiss the remaining two counts at sentencing and not to object to a community control sanction.

{¶ 4} During the Crim.R. 11 colloquy, the trial court relevantly advised Black as follows:

> [T]here are Constitutional rights you're giving up here today by entering these pleas. You're giving up your presumption of innocence; your right to a jury or a court trial; your right to present evidence in your favor at the trial; and to use the Court's subpoena power; your right to confront witnesses that would testify against you at the trial and have the attorney question or cross-examine them; your right to require the State to prove your guilt beyond a reasonable doubt, and, lastly, your right to remain silent.

{¶ 5} The court asked Black whether he understood that a plea of guilty was a complete admission of his guilt, and Black answered in the affirmative. Black also

2.

affirmed that he was making the plea of his own free will and choice, that he was not under the influence of drugs or alcohol, and that nothing was impairing his ability to understand the proceedings. The trial court inquired as to whether Black was satisfied with his attorney's representation, and Black answered yes. When the trial court advised Black that it was not required to follow the State's sentencing recommendation and could, instead, impose a prison sentence, Black indicated that he understood. And when the trial court asked Black whether he had any questions for his attorney, and Black answered, "No. No, he's – he's pointed me pretty great." Finally, the trial court asked Black whether he had understood "everything up to this point," and Black answered, "Yes, sir." The trial court, after finding that Black had been advised of his rights and had made a knowing, voluntary and intelligent waiver of those rights, accepted Black's pleas and found him guilty.

{¶ 6} Following the colloquy, the trial court was notified that Cuyahoga County had recently indicted Black on five counts of drug possession and, further, had issued a capias warrant for his arrest. Upon receiving this information, the trial court explained to Black that he would likely be transported back to Cuyahoga County, but also that he was expected to return to Sandusky County for his sentencing hearing. The court further instructed Black that if he were to be incarcerated in Cuyahoga County, he would need to keep in touch with his defense counsel and the trial court so that they could arrange for his transportation back to Sandusky County for sentencing. Black indicated that he understood.

3.

{¶ 7} Black's sentencing hearing was scheduled for November 26, 2024. Black failed to appear for sentencing on this date, and the trial court issued a capias warrant for his arrest. Black was later arrested, and his sentencing hearing was held on December 19, 2024. At the hearing, defense counsel requested that Black be sentenced to community control, and the State stated that it did not object to this sentence. Addressing the trial court, Black explained his reason for missing his original court date, as follows:

> [Recovery Resources] didn't have a date set up, so I did take the next time I could, and due to me missing court, I tried to come to court the next day. I apologize for what happened. It was all my fault. I should have looked deeper into it, but the mistakes were made. I was incarcerated for six days there. The charges there were dropped, and then I was moved out here, because I constantly told them every day that I needed to come out here, and due to them not actually looking up, you know, different areas and stuff, they – they looked up Sandusky, and they said that it is fine, we're going to send you out there, and then I am blessed today to actually be in the courtroom, even though it's been 21 days after the fact of may warrant was issued, so, thank you.

{¶ 8} Regarding Black's criminal history, the trial court noted Black's "robust record," which included several probation violations and convictions for drug offenses with respect to which Black was provided opportunities for intervention and treatment. Among Black's convictions was a 2021 conviction for attempted drug possession out of Cuyahoga County, a felony of the fourth degree.

{¶ 9} The trial court found that a community control sanction was not required, due to Black's prior conviction for a felony offense, and that the targeted community alternatives to prison (T-CAP) program for prisoners applied. Black was sentenced to 180

4.

days in jail on each count, with the sentences for each count to run concurrently, and the remaining charges were dismissed. Black timely filed an appeal.

## Assignments of Error

{¶ 10} On appeal, Black asserts the following assignments of error:

I.      The trial court failed to ensure that the defendant fully understood all the rights he was giving up in waiving his right to a trial, and thus defendant's guilty plea was not knowingly and voluntarily made.

II.      The trial court erred because it lacked discretion to sentence the defendant to a jail term that was not part of a community control residential sanction.

## Law and Analysis

**First Assignment of Error**

{¶ 11} Black argues in his first assignment of error that his guilty plea was not knowingly and voluntarily made, because the trial court "failed to ensure" that he understood the rights he was giving up in waiving his right to trial.

{¶ 12} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 2018-Ohio-5132, ¶ 10 (lead opinion), citing *State v. Clark*, 2008-Ohio-3748, ¶ 25. "Crim.R. 11(C)(2) governs the process that a trial court must follow before accepting a plea of guilty to a felony charge." *State v. Brinkman*, 2021-Ohio-2473, ¶ 11, citing *Bishop* at ¶ 11. Relevant here, Crim.R. 11(C)(2)(c) requires the court to advise the defendant that he has certain constitutional rights and to ascertain whether the defendant

understands that by pleading guilty he is waiving those rights. The court shall not accept a plea of guilty without first doing the following:

> Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

*Id.* "Crim.R. 11(C)(2)(c) requires the court to communicate this information so that the defendant can make an intelligent and voluntary decision whether to plead guilty." *Brinkman* at 11, citing *State v. Miller*, 2020-Ohio-1420, ¶ 18, citing *State v. Veney*, 2008-Ohio-5200, ¶ 18.

{¶ 13} "[A] trial court is required to strictly comply with Crim.R. 11(C)(2)(c) and…its failure to do so invalidates the plea." *Id.* at ¶ 12, citing *Veney* at ¶ 32." "Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant." *Veney* at ¶ 29. A failure to notify the defendant of his constitutional rights under Crim.R. 11(C)(2)(c) amounts to plain error that cannot be deemed harmless. *Brinkman* at ¶ 12, citing *Miller* at ¶ 13, 16.

{¶ 14} When an appellant seeks to vacate his plea on appeal because the plea was not entered in a knowing, intelligent, and voluntary matter due to the trial court's failure to comply with Crim.R. 11, """the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied

6.

fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? And (3) if a showing of prejudice is required, has the [appellant] met that burden?"'" *State v. Johnson*, 2023-Ohio-2008, ¶ 14 (6th Dist.), quoting *State v. Morgan*, 2021-Ohio-3996, ¶ 15 (6th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17. "Unless the trial court fails to explain a constitutional right in Crim.R. (C)(2)(c) or completely fails to comply with a portion of Crim.R. 11(C) – e.g., by failing to mention mandatory postrelease control, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 – the appellant is required to show prejudice to have his plea vacated." *Id.*, citing *Dangler* at ¶ 13-16. "The test for prejudice is "'whether the plea would have otherwise been made.'"" *Id.* at ¶ 17, quoting *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 15} In challenging the validity of his plea, Black complains that the trial court only "summarily set forth those constitutional rights which [Black] would be waiving by pleading guilty," and, further, "made no inquiry of any kind as to whether the defendant understood those rights." Although Black criticizes the trial court's explanation of the rights as being the "barest recitation" of those rights, his primary complaint is that there was "not even the most remote inquiry as to whether [he] understood any or all of it."

{¶ 16} The Ohio Supreme Court in *State v. Ballard*, 66 Ohio St.2d 473 (1981) explained that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading

7.

guilty." *Id.* at 479. Nevertheless, "the failure to so proceed will not necessarily invalidate a plea." *Id.*

{¶ 17} Because "the purpose of Crim.R. 11 is to convey to the defendant certain information so that he or she can make a voluntary and intelligent decision whether to plead guilty," "'the focus, upon review, is whether the record shows that the trial court explained or referred to the right[s] in a manner reasonably intelligible to [the] defendant.'" *State v. Reyes*, 2021-Ohio-3599, ¶ 22 (8th Dist.), quoting *Ballard* at 479. "Providing an explanation of the rights that will be forgone upon pleading guilty satisfies the general purpose of Crim.R. 11(C).'" *Id.*, quoting *State v. Donaldson*, 2018-Ohio-4872, ¶ 10. That said, at least one Ohio appellate court has held that a trial court should, "at the very least," "ensure the defendant's understanding of the relevant rights and associated penalties once at the conclusion of its colloquy." *Id.* at ¶ 23.

{¶ 18} Here, the trial court's recitation of rights included all the rights set forth in Crim.R. 11(C)(2)(c) and used language closely approximating that contained in the rule. As such, we cannot say that the trial court failed to explain the waiver of Black's rights in a reasonably intelligent manner.

{¶ 19} In contradiction to Black's claim that the trial court made "no inquiry of any kind" as to whether Black understood his Crim.R. 11(C)(2)(c) rights, the record reveals that the trial court asked Black generally, at the conclusion of the plea colloquy, whether he had understood everything up to that point -- and Black responded that he had. Although the trial court did not stop after explaining each right to ask if Black

8.

subjectively understood the right as just explained, Black did not express any confusion during the plea hearing and pleaded guilty in accordance with the terms of the plea agreement. *See State v. Eggers*, 2013-Ohio-3174, ¶ 16 (2d Dist.) ("By answering 'guilty,' [the defendant] implied that he understood that a guilty plea would waive his rights and that he was pleading guilty."). Under these facts, we are unable to conclude that the structure of the trial court's plea colloquy invalidated Black's guilty pleas. Accordingly, Black's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 20} While Black admits that "[t]here is no question that the trial court had discretion to sentence him up to 180-days in jail…as part of a community control sanction" under R.C. 2929.16(A)(2), [1] he claims in his second assignment of error that his sentence was contrary to law because the trial court lacked the discretion under R.C. 2929.13(B)(1)(a) to sentence him to a 180-day jail term that was not part of a community control residential sanction.

---

[1] R.C. 2929.16, which deals with "community residential sanctions," states in pertinent part:

> (A) Except as provided in this division, the court imposing a sentence for a felony upon an offender who is not required to serve a mandatory prison term may impose any community residential sanction or combination of community residential sanctions under this section….Community residential sanctions include, but are not limited to, the following:
>
> …
>
> (2) Except as otherwise provided in division (A)(3) or (6) of this section and subject to division (D) of this section, a term of up to six months in jail.

{¶ 21} R.C. 2929.13(B)(1) has two parts. The first part, set forth at R.C. 2929.13(B)(1)(a), requires a determination as to whether community control is mandatory.  The court must impose community control for a qualifying fourth or fifth degree felony if three conditions are met, one of which is that the offender was not previously convicted of, or did not plead guilty to, a felony. R.C. 2929.13(B)(1)(a)(i). Black does not dispute that he was convicted of a felony. Therefore, community control was not mandatory in this case. Consistent with this determination, the record makes clear that a prison term, rather than community control, was, in fact, imposed. Specifically, the trial court found that "R.C. 2929.34(B)(3)(c-d) TCAP does apply," and ordered that "any term of incarceration imposed on the defendant be served at a local detention facility."[2]

{¶ 22} The second part of R.C. 2929.13(B)(1), set forth at R.C. 2929.13(B)(1)(b), enumerates a list of specific circumstances under which a court, in its discretion, may impose a prison term for fourth and fifth degree felonies that are not offenses of violence or other qualifying assaults. We note that when imposing a prison sentence pursuant to R.C. 2929.13(B)(1)(b), a trial court is not required to make specific findings. *State v. Miller,* 2025-Ohio-991, ¶ 13, citing *State v. Benson*, 2019-Ohio-4635, ¶ 13 (7th Dist.). And in this case, the trial court did not make any such findings.

---

[2] R.C. 2929.34(B)(3)(c)(i) and (ii) make clear that the T-CAP program applies, in particular, to offenders, such as Black, who are sentenced to a prison term for a fourth or fifth degree felony.

10.

{¶ 23} On appeal, the State argues that two of the enumerated circumstances apply: (1) "The offender violated a term of the conditions of bond as set by the court." R.C. 2929.13(B)(1)(b)(iii); and (2) "The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance." R.C. 2929.13(B)(1)(b)(x).

{¶ 24} First, the State asserts that Black violated his bond in this case by failing to appear for the scheduled sentencing hearing on November 26, 2024. And we agree.

{¶ 25} Arguing against this conclusion, Black claims that we should disregard his failure to appear at sentencing as a valid basis for the imposition of a prison term under R.C. 2929.13(B)(1)(b), because he "*could have been* in custody in Cuyahoga County" on November 26, 2024. (Emphasis added.) We reject this argument because nothing in the record establishes that Black actually was in Cuyahoga Court custody, or was otherwise unavailable for sentencing, on November 26, 2024. To the contrary, Black admitted at his sentencing on December 19, 2024, his "mistake" in failing to appear on the earlier date.

{¶ 26} As an additional basis for imposing a prison term under R.C. 2929.13(B)(1)(b), the State asserts that Black committed the instant offenses while under a community control sanction -- specifically "probation" -- that was imposed in an earlier, Stark County, case. Indeed, the record shows that on August 14, 2024, the Stark County Court of Common Pleas sentenced Black to 90 days in jail, with 90 days suspended on conditions of good behavior, and 50 hours of community service, for the

11.

offense of criminal damaging or endangering, a misdemeanor of the second degree. He was also ordered to pay costs and fines.

{¶ 27} Again, Black urges us to reject this as a basis for sentencing him under R.C. 2929.13(B)(1)(b). First, Black disputes the State's assertion that the Stark County court sentenced him to "probation," per se. He also claims that because the jail sentence was suspended at the time that Black committed the instant offenses, "it cannot be said that Black was under a misdemeanor residential sanction from the Stark Court at the time the [instant offenses] were committed."

{¶ 28} At the outset of our analysis, we reject Black's argument that he was not effectively on some form of probation. The Supreme Court of Ohio in *State v. Heinz,* 2016-Ohio-2814, defines "probation" as "a period of time served during suspension of a sentence." *Id.* at ¶ 14 (recognizing that effective July 1, 1996, the General Assembly enacted Am.Sub.S.B. No. 2, 146 Laws, Part IV, 7136, to revise Ohio's felony sentencing statutes, and among other changes, "community control replaced probation *as a possible sentence* under Ohio's felony sentencing law." (Emphasis in original)). Probation, is "an act of grace allowing a convict to go free on conditions and as a contract for leniency between the offender and the sentencing judge;" it is not a remission of penalty, as "the convict remains under the supervision of the court and subject to any restraints and conditions imposed, and a breach of those conditions permits imposition of the suspended prison sentence. *Id.* at ¶ 11. Because Black was under a 90-day suspended jail sentence

"on conditions of good behavior," he might well be said to have committed the instant offenses while he was on probation.

{¶ 29} Even assuming Black was not probation, however, he was clearly under several forms of community control. As set forth by the Fourth District Court of Appeals in *State v. Lucas*, 2017-Ohio-7663 (4th Dist.):

> R.C. 2929.25(A)(1) describes two ways that a trial court may impose community control sanctions in a misdemeanor case. First, 'R.C. 2929.25(A)(1)(a) gives the court the option of directly imposing community control sanctions.' *State v. Russell*, 2011-Ohio-1181, ¶ 27. Second, 'R.C. 2929.25(A)(1)(b)…allows the trial court to impose a jail term, suspend the jail term, and then place the offender on community control.' *Id.*

*Id.* at ¶ 7.

{¶ 30} "Community control sanction" is defined, in relevant part, at R.C. 2929.01(E) as "a sanction that is not a jail term and that is described in section 2929.26, 2929.27, or 2929.28 of the Revised Code.[3] R.C. 2929.27 provides in relevant part that "[n]onresidential sanctions include, but are not limited to, "[a] term of community service of up to… two hundred hours for a misdemeanor of the second, third, or fourth degree." And R.C. 2929.28 provides that financial sanctions include costs and fines.

{¶ 31} Although it is undisputed that Black was sentenced to 50 hours of community service and ordered to pay costs and fines, Black argues that were he to have

---

[3] We note that "community control sanction" includes probation only if the sentence involved was imposed for a felony that was committed prior to July 1, 1996, or if the sentence involved was imposed for a misdemeanor that was committed prior to January 1, 2004. R.C. 2929.01(E).

13.

completed his Stark County community service and paid his costs before August 18, 2024, he would not have been under a community control sanction from the Stark County Court on August 18, 2024. While Black's statement may well be true, he admits that the record does not indicate either that he performed his community service or that he paid his fines and costs. Nor does he even allege that he did. Instead, he argues only that "[i]f the trial court based its discretion to sentence [him] on R.C. 2929.13(B)(1)(x), based on the assumption that [he] was under a community control sanction from the Stark Court, the trial court committed error because this is an assumption not supported by the record." We reject Black's argument inasmuch as the record that is before the court establishes only that community control sanctions were imposed on Black (less than a week) before the offenses were committed in the instant case, without any suggestion or indication that those sanctions had yet been satisfied. Absent any evidence or allegation to the contrary, it would not have been error for the court to find on this record that Black remained under community control sanctions at the time the offenses in this case were committed.

{¶ 32} Because we agree with the State that Black committed the offenses in this case while under several community control sanctions -- and quite possibly while under probation -- in the Stark County case, we find his second assignment of error not well-taken.

**Conclusion**

**{¶ 33}** The judgment of the Sandusky County Court of Common Pleas is affirmed.

Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.